**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel.,** | ) | |
| **TONY ELAM,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 13 C 1690** |
| | ) | |
| **KIM BUTLER**[1], | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION AND ORDER**

On December 20, 2001, Petitioner Tony Elam's efforts to collect a drug debt resulted in the death of Charles Collins. Elam was charged with multiple counts of first-degree murder, aggravated kidnapping, and armed robbery. He was ultimately convicted on April 5, 2007, on two counts of first-degree murder and was sentenced to thirty-five years in prison. Having exhausted state court appeals, Elam now petitions for relief pursuant to 28 U.S.C. § 2254, raising several claims, including trial court error and ineffective assistance of appellate counsel. Because each of Elam's claims is procedurally defaulted or meritless, the petition is denied [1], and the court declines to issue a certificate of appealability.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.     Background**

Absent clear and convincing evidence, on habeas review, a federal court presumes the factual findings made by the last state court to be correct. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). The following facts are drawn from the Illinois Appellate Court's Order affirming Elam's conviction on direct appeal. (*See* Rule 23

---

[1]     Elam's original petition named Michael Atchison, the warden of Menard Correctional Center, as the Respondent. Rick Harrington replaced Atchison; Kim Butler then replaced Harrington. Accordingly, Butler is hereby substituted as the respondent. *See* FED. R. CIV. P. 25(d).

Order, *People v. Elam*, No. 1-07-1019 (1st Dist. Ill. App. Ct. Jan. 13, 2010), Ex. A to St. Ct. R. [17-1], hereinafter "Direct Appeal Order.")

In the early morning of December 20, 2001, codefendant Cherita Rayford drove Elam and two other individuals from Seventy-Fifth and Dorchester to the north side of Chicago in search of Charles Collins. (Pet.'s Direct Appeal Opening Br., Ex. B to St. Ct. R. [17-2], hereinafter "Pet's Direct Appeal Br.;" Direct Appeal Order at 2.) Collins owed Elam approximately $410 in connection with a previous drug transaction. (Direct Appeal Order at 2.) After picking Collins up, the individuals drove to a number of locations where Collins said he would be able to collect the funds. (*Id.*) Ultimately, however, Collins's efforts to obtain the money owed proved unsuccessful, and Elam beat Collins around his face and head, resulting in hemorrhaging, lacerations, and a missing tooth. (*Id.*) As the group drove past two police cars, Collins opened the car door and shouted for help. (*Id.*) Collins then either jumped or was thrown from the vehicle, and died from the injuries that he sustained to his spine and the back of his head when he hit the pavement. (Direct Appeal Order at 2.)

Officer Bertram was on routine patrol in an unmarked car with his partner, Officer Jack Axium, when he witnessed a black male waving his arms above the door of a blue four-door Chevrolet and yelling "help, help." (Mot. to Withdraw as Counsel, Ex. I to St. Ct. R. [17—9], hereinafter "Mot. to Withdraw," 4—5.) The officers followed the Chevrolet as the vehicle made a right turn to go south on Broadway. (*Id.* at 5.) As the officers approached the intersection of Granville and Broadway, they saw Collins lying on the ground. (Id.) Officer Bertram testified that he did not see Collins fall from the car. (*Id.*)

Officer Theodora Salvage and her partner were on routine patrol on December 20, 2001 around 12:45 a.m. when they received a police radio broadcast and drove to the scene at Granville and Broadway, where Collins lay on the ground. (Mot. to Withdraw at 4.) Officer Salvage saw Elam standing on the southwest corner of the intersection and then saw him run east on Granville. (*Id.* at 5.) Officer Salvage followed Elam in her car to the corner of Granville

and Winthrop, but Elam ran into a gangway off an alley. (*Id.*) Officer Salvage got out of her car and followed him on foot, shouting at him to stop, and ultimately arrested him when he reached a locked gate at the end of the gangway. (*Id.*)

Following his arrest, Elam gave a videotaped statement in which he admitted to beating Collins in an attempt to retrieve the money Collins owed him. (Direct Appeal Order at 2.) Elam and Rayford were charged with multiple counts of first-degree murder, aggravated kidnapping, and armed robbery. (*Id.* at 1.) The State dismissed many of the charges prior to trial, but Elam was found guilty by a jury on two counts of first-degree murder, and he was sentenced to thirty-five years' imprisonment on April 5, 2007. (*Id.* at 1; Order Denying Post-Conviction Pet., Ex. N to St. Ct. R. [17-14].)

## II.    Direct Appeal

Petitioner Elam appealed, arguing, first, that the prosecutor made improper comments during closing and rebuttal arguments: (1) Petitioner argued that during closing and rebuttal, the prosecutor improperly inflamed the passions of the jury by urging the jury to send a message that Collins's life was worth more than $410 and to find Elam guilty of first-degree murder because "justice demands it" (Pet.'s Direct Appeal Br., 16–18); (2) Petitioner claimed that the prosecutor improperly criticized the defense for cross-examining State witnesses about pre-trial communications with the prosecutor (*Id.* at 18–21); (3) Petitioner urged that the prosecutor improperly belittled defense counsel during rebuttal argument by suggesting that the defense was focused on unimportant details. (*Id.* at 21—22.)

The appellate court rejected all of these arguments. (Direct Appeal Order at 7.) The court observed, first, that a prosecutor is afforded great latitude in making closing and rebuttal arguments, and that the court will not disturb the trial court's ruling absent a showing of clear abuse of discretion. With respect to Petitioner's claim that the prosecutor improperly inflamed the passions of the jury during closing, the court concluded that Petitioner waived that claim because he neither objected to it at trial nor raised it in a post-trial motion. (*Id.* at 2–4.) The

court further held that there was no plain error to excuse Petitioner's procedural default, as the prosecutor "merely denounced defendant's activities and demanded that justice be served, which falls within the ambit of proper closing argument." (*Id.* at 4.)  With respect to Petitioner's second claim, that the prosecutor improperly criticized the defense's cross-examination of prosecution witnesses, the appellate court pointed out that defense counsel effectively "opened the door" to that criticism by questioning Officer Brad Bertram concerning his pre-trial communications with the prosecutor.  (*Id.* at 5.)  Lastly, the court considered Petitioner's argument that the prosecutor improperly suggested that the defense focused on unimportant details, using comments like "[t]hey're just pulling things out now;" "the evidence is overwhelming, and that's why there is this focus and there is [sic] these sidetracks that they go off on because they know that the evidence is overwhelming;" and "[t]hey're awfully interested in getting me to sit down because they know what the evidence says."  (Direct Appeal Order at 6.)  Those comments, the court held, generally challenged "the theories of defense, in the face of overwhelming evidence," rather than defense counsel himself.  (*Id.*)  True, one of the prosecutor's comments ("[t]hey're awfully interested in getting me to sit down") could be construed as an attack on defense counsel; but the trial court instructed the jury to decide the case based on the evidence, and the prosecutor's comment was not substantial enough to have prejudiced the defendant and deprived him of a fair trial.  (*Id.* at 6–7.)  The appellate court concluded that none of the comments defendant challenged deprived Petitioner of a fair trial.  (*Id.* at 7.)

Although Petitioner did not dispute that his thirty-five year sentence falls within the statutory range for the offense, he challenged the sentence as excessive because the court failed to consider mitigating factors.  (Pet.'s Direct Appeal Br. at 25–31.)  The appellate court concluded otherwise.  (Direct Appeal Order at 9.)  In support of its conclusion that the trial court did not abuse its discretion in sentencing Petitioner, the appellate court noted that the trial court

made its decision after considering the appropriate sentencing factors, including the nature of the offense, Petitioner's expression of remorse, and Petitioner's chances for rehabilitation. (*Id.*)

Finally, Petitioner argued that one of his two convictions for first-degree murder must be vacated because both convictions arose out of the death of a single victim. (Pet.'s Direct Appeal Br. at 32.) On this issue, Petitioner prevailed; the state appellate court recognized that "convictions for more than one offense cannot be carved from the same criminal act." Accordingly, the appellate court vacated one of the two first-degree murder convictions (Count 24). (Direct Appeal Order at 9, citing *People v. Szabo*, 94 Ill. 2d 327, 350, 447 N.E.2d 193, 204 (Ill. 1983).) The appellate court affirmed the trial court's judgment of the Circuit Court of Cook County in all other respects.[2] (*Id.*)

Petitioner filed a timely petition for leave to appeal ("PLA") to the Supreme Court of Illinois, raising the same claims of prosecutorial misconduct he had presented on direct appeal in the appellate court. (Direct Appeal PLA, Ex. E to St. Ct. R. [17-5], 1–4.) Petitioner also again argued that the trial court abused its discretion by imposing a sentence of thirty-five years in prison. (*Id.* at 4–5.) The petition for leave to appeal was denied on November 25, 2009. (Order Denying PLA, *People v. Elam*, No. 109022 (Ill. 2009), Ex. F to St. Ct. R. [17-6].)

### III. Post-Conviction Proceedings

Petitioner filed a *pro se* petition for post-conviction relief on April 1, 2010 in the Circuit Court of Cook County. (Post-Conviction Pet., Ex. G to St. Ct. R. [17-7]. hereinafter "Post-Conviction Pet.") Petitioner raised nine issues. (*Id.*) First, Petitioner claimed appellate counsel was ineffective for failing to raise a claim of prosecutorial misconduct on direct appeal. (*Id.* at 1–2.) Second, Petitioner urged ineffective assistance of trial counsel for failing to object to Officer

---

[2] The court notes that in Petitioner's Direct Appeal Opening Brief, Petitioner requested that the court: "reverse his conviction and remand for a new trial pursuant to Argument I, reduce his sentence or remand the cause for resentencing and the opportunity to file a motion to reconsider sentence pursuant to Argument II, or correct the mittimus to reflect only one murder conviction pursuant to Argument III." (Pet.'s Direct Appeal Br. at 33.) This court observes that the appellate court simply adopted Petitioner's final proposition.

Theodora Salvage's references to Petitioner as the "offender" in her trial testimony, as well as ineffective assistance of appellate counsel for failing to raise a claim of ineffective assistance of trial counsel on direct appeal. (*Id.* at 2–3.) Specifically, when asked what she did once Elam was arrested and they were both inside an interview area, Officer Salvage testified, "We had to get our paperwork together and process the offender or Mr. Elam." (Mot. to Proceed as Poor Person and Appointment of Counsel, Ex. G to St. Ct. R. [17-11], UUU 121; Post-Conviction PLA, Ex. K to St. Ct. R. at UUU 121.) Third, Petitioner argued that the police failed to advise him of his *Miranda* rights, and that his appellate counsel was ineffective in declining to argue this issue on direct appeal. (Post-Conviction Pet. Ex. G to St. Ct. R. at 3–4.) Fourth, Petitioner claimed that appellate counsel was ineffective for failing to challenge the trial court's "erroneous instructions during opening statements" as plain error. (*Id.* at 4–5.) Fifth, Petitioner urged that appellate counsel was ineffective in failing to argue that trial counsel should have objected to Officer Salvage's testimony that she heard her partner inform Petitioner of his *Miranda* rights. (*Id.* at 5–6.) Sixth, Petitioner argued that the trial court failed to properly admonish Petitioner regarding what Petitioner believes to be a "more onerous" sentence. (*Id.* at 6.) Seventh, Petitioner argued that the State's expert, Douglas Ridolfi ("Ridolfi"), presented false testimony. (*Id.* at 7–8.) Specifically, Ridolfi, a forensic scientist, worked for the Illinois State Police Crime Lab and was called to present testimony regarding the blood stain evidence recovered from the car that was used in the offense. (Mot. to Withdraw at 14.) Ridolfi testified that the blood stains recovered from the vehicle were consistent with those originating from the victim. (*Id.*) On cross-examination, Ridolfi testified that he entered a second sample of blood, also retrieved from the vehicle, into the Illinois State Police database. This second sample, which contained female DNA, did not match that of co-Defendant Rayford, and did not match any other sample in the database. (*Id.*) Ridolfi later admitted to prosecutors that he did not in fact run a search through the DNA database to determine whether there was a match to another female.[3] (*Id.* at

_____

[3]     Petitioner also challenged Ridolfi's purported testimony concerning items found

14–15.) Petitioner further claimed ineffective assistance of appellate counsel for failing to raise this issue on direct appeal. (Post-Conviction Pet. at 7.) Next, Petitioner claimed that the State failed to prove him guilty beyond a reasonable doubt, and that appellate counsel was ineffective for failing to argue reasonable doubt on direct appeal. (*Id.* at 8–9.) Finally, Petitioner argued that appellate counsel was ineffective for failing to raise seven issues preserved for review that were "obvious and clearly stronger than ones raised." (*Id.* at 9–10.) These seven issues, according to Petitioner, are as follows: (1) the state failed to prove Petitioner guilty beyond a reasonable doubt, (2) the verdict was against the weight of the evidence, (3) the trial court erred in denying defense counsel's motion for suppression, (4) the trial court erred in denying defense counsel's motion for mistrial after the State made inflammatory comments to the jury, (5) the trial court erred in granting the prosecution's motion *in limine*, allowing the admission of statements made by Petitioner and co-defendant, (6) the trial court erred in denying the motion for mistrial made in response to Officer Salvage's testimony, and (7) Petitioner was deprived of a fair trial when the prosecution refused to stipulate "to that matter which would have corrected erroneous testimony," specifically, that Ridolfi initially testified untruthfully that he conducted a search of the unknown female DNA, and compared it against the DNA in the police database. (*Id.* at 10.)

On March 23, 2010, Petitioner submitted a motion to proceed as a poor person and for appointment of counsel and a petition for post-conviction relief. (Mot. to Proceed as Poor Person and Appointment of Counsel, Ex. G to St. Ct. R.; Post-Conviction Pet.) On May 7, 2010, the circuit court summarily dismissed the petition as frivolous and patently without merit. (Post-Conviction Appeal Order, *People v. Elam*, No. 1-10-1649 (Ill. App. Ct. Dec. 28, 2011), Ex. H to Post-Conviction Pet. [17-8] at 2.) Subsequently, the State Appellate Defender, who was appointed to represent Petitioner on appeal, filed a motion for leave to withdraw as counsel

---

in a backpack, but as Petitioner's lawyer acknowledged, Ridolfi gave no such testimony. (Mot. to Withdraw at 15; Post-Conviction Pet. at 7.)

pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). (Mot. to Withdraw) Appellate counsel concluded that Elam's allegations of ineffective assistance of counsel are without arguable merit. (*Id.* at 17.) Specifically, counsel noted that both Detective Villardita and Assistant State's Attorney Fielder testified that they advised Petitioner of his *Miranda* rights prior to taking a formal statement. (*Id.* at 12.) Likewise, counsel noted that Ridolfi, the forensic scientist, acknowledged that he made a mistake in his original testimony, but Ridolfi's mistake pertained solely to his failure to run female DNA found in the car through the DNA database, a matter collateral to the evidence against Petitioner. (*Id.* at 14–15.) Ridolfi never testified about a backpack, nor did he testify to examining a backpack, or to recovering any items that may have been inside of a backpack (*id.* at 14), as Petitioner claimed, and therefore such testimony had no bearing on the jury's decision to convict Petitioner. (*See id.* at 15.) On August 17, 2011, Petitioner responded to counsel's *Finley* motion, raising the same claims argued in his post-conviction petition. (Pet.'s Resp. to Mot. to Withdraw, Ex. J to St. Ct. R. [17-10].) On December 28, 2011, the state appellate court granted the State Appellate Defender's motion for leave to withdraw as counsel, denied Petitioner's request for the appointment of new counsel, and affirmed the order of the Circuit Court of Cook County. (Post-Conviction Appeal Order, Ex. H to Post-Conviction Pet. at 2.)

Again, Petitioner filed a PLA to the Illinois Supreme Court, asserting the same claims he raised in his post-conviction petition and in his response to counsel's *Finley* motion. (Post-Conviction PLA, Ex. K to St. Ct. R. [17-11].) On March 28, 2012, the Supreme Court of Illinois denied the PLA. (Order denying Post-Conviction PLA, *People v. Elam*, No. 113828 (Ill. 2012), Ex. L to Post-Conviction PLA. [17-12].)

Petitioner did not file a petition for a writ of certiorari to the United States Supreme Court relating to either his direct appeal or post-conviction appeal. (Habeas Pet. [1,] 2.) Instead, on February 22, 2013, Petitioner filed this petition pursuant to 28 U.S.C. § 2254. (Habeas Pet.) Respondent concedes that the petition is timely and that Petitioner has exhausted his available

state court remedies by filing a direct appeal and post-conviction petition.  Petitioner identifies nine alleged bases for habeas relief.  First, Petitioner asserts that appellate counsel was ineffective on direct appeal for failing to argue that the prosecutor made improper inflammatory comments to the jury during closing arguments, and therefore he was denied his right to a fair trial.  Second, Petitioner alleges that the trial court abused its discretion in sentencing him to a term of thirty-five years in prison.  Third, Petitioner asserts that appellate counsel was ineffective, on direct appeal, for failing to raise the following issues: (a) Petitioner's *Miranda* rights were violated; (b) the trial court erred by refusing to instruct the jury on second-degree murder; (c) Petitioner's claim that the prosecutor made inflammatory statements to the jury presented a plain error; (d) the trial court should have admonished Petitioner regarding his "more onerous" sentence; (e) the prosecutor "knowingly used false testimony" at trial; (f) the trial court wrongly denied Petitioner's motion to suppress his statement to the police; (g) the trial court erred by denying a motion for a mistrial due to inflammatory remarks made to the jury; and (h) Officer Theodora Salvage's testimony was false.  Fourth, Petitioner alleges that appellate counsel was ineffective for failing to object to Officer Salvage's testimony referring to Petitioner as the "offender."  Fifth, Petitioner alleges that the State failed to prove him guilty of felony murder beyond a reasonable doubt, and that appellate counsel was ineffective for failing to argue the reasonable doubt issue on direct appeal.  Sixth, Petitioner asserts that he was denied his confrontation right to see and hear Officer Bertram when the prosecution allegedly argued that an inference of guilt was present after defense counsel requested to cross-examine State's witnesses.[4]  Seventh, Petitioner asserts that the trial court erred by refusing to instruct the jury on second-degree murder.  Eighth, Petitioner alleges that appellate counsel was ineffective for failing to argue on direct appeal that the trial court should have instructed the jury on self-defense and second-degree murder.  Lastly, Petitioner alleges that he is actually innocent of

---

[4]     The court notes that Petitioner's attorney did, in fact, cross-examine Officer Bertram.

murder, and that the prosecutor knowingly used false testimony at trial. (Habeas Pet. at 6A–6D.) Respondent has filed an answer and maintains that Claims One, Three, Four, and Five are meritless; that Claim Two is non-cognizable, procedurally defaulted, and meritless; that Claim Nine is non-cognizable; and that Claims Six, Seven, and Eight are procedurally defaulted. (Resp.'s Answer [16] at 6.)

## DISCUSSION

## I.      Standard of Review

Under § 2254 of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant a writ of habeas corpus to a petitioner in custody pursuant to a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal habeas court has the power only to remedy "violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). "Errors of state law in and of themselves are not cognizable on habeas review." *Id.* Therefore, a federal court will only grant a writ of habeas corpus if the state court's decision "(1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *See Richardson v. Lemke*, 745 F.3d 258, 273 (7th Cir. 2014).

### A.      Requirement of Exhaustion

Before seeking habeas review, the AEDPA requires a petitioner to exhaust all available state remedies. 28 U.S.C. § 2254(b)(1)(A); *See Bolton v. Akpore*, 730 F.3d 685, 694 (7th Cir. 2013). The exhaustion requirement's primary purpose is to provide the State with an opportunity to correct the alleged violation. *See Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir.

2013) (noting that the exhaustion requirement "alerts the state to the problem and invites corrective action") (internal quotation marks, citation, and alterations omitted.

### B.    Procedural Default

Generally, federal habeas courts are prohibited from considering habeas petitions that were procedurally defaulted. *See Coleman v. Lemke*, 739 F.3d 342, 349 (7th Cir. 2014). A claim is procedurally defaulted if a petitioner fails to fairly present that claim to state courts by asserting it through at least one complete round of state-court review, either on direct appeal or in post-conviction proceedings. *Richardson*, 745 F.3d at 268. The complete round obligation requires that a petitioner "raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* Procedural default likewise applies when a state court relies on an independent and adequate state law ground to resolve a petitioner's federal claim. *See id.* (discussing claims as procedurally defaulted when a state court relies on an independent and adequate state law ground). In determining whether a claim has been fairly presented, the court construes *pro se* petitions liberally, *see Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014), and will excuse procedural default if a petitioner can demonstrate (1) "cause for and prejudice from the default," or (2) that the court's failure to consider the claim will result in "a fundamental miscarriage of justice." *Richardson*, 745 F.3d at 272.

## II.    Petitioner's Claims

Elam's nine separate claims are addressed in turn below.

### A.    Claim One: Ineffective Assistance of Counsel

As his first ground for relief, Petitioner contends that appellate counsel was ineffective for failing to argue on direct appeal that the prosecutor made inflammatory remarks to the jury during closing arguments. (Habeas Pet. at 5.) This claim requires little discussion, as it is defeated by the record: counsel did raise that issue in Petitioner's direct appeal opening brief. (Pet.'s Direct Appeal Br. at 16–24.) Counsel also raised the issue of prosecutorial misconduct

in his reply brief. (Pet.'s Direct Appeal Reply Br., Ex. D [17-4] to St. Ct. R. at 1–6.) Counsel argued in Petitioner's opening brief that the prosecutor's comments were "prejudicial, inflamed the jury's passions, diminished Elam's right to confront witnesses, and disparaged the defense." (Pet.'s Direct Appeal Br. at 24.) Additionally, counsel analogized the prosecutor's directive to the jury, to find Petitioner guilty "because justice demands it," to telling the jurors that the oath they took required a guilty finding. (Pet.'s Direct Appeal Reply Br., Ex. D to St. Ct. R. at 2.) In moving to withdraw as counsel, post-conviction appellate counsel noted that "appellate counsel challenged the propriety of several of the prosecutor's arguments on direct appeal," so any claim that assumes his failure to do so fails. (Mot. to Withdraw at 11.)

Petitioner does not allege that the manner in which appellate counsel raised the claim was constitutionally inadequate. (*See* Habeas Pet. at 5.) The state appellate court held that Petitioner waived this claim of error because he did not object to the comment at trial. (Direct Appeal Order at 3.) The court further held that there was no plain error to excuse Petitioner's procedural default; the prosecutor was doing no more than "demand[ing] that justice be served, which falls within the ambit of proper closing argument." (*Id.* at 4.) The state appellate court's rejection of the claim on post-conviction review did not result in a decision that "was contrary to, or an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. § 2254(d); *See Richardson*, 745 F.3d at 273. Therefore, Claim One is dismissed.

### B. Claim Two: Abuse of Discretion

Petitioner's second claim is that the trial court abused its discretion by sentencing him to a term of thirty-five years in prison. This claim fails for several reasons.

First, a claim of error in sentencing is non-cognizable on federal habeas review because it challenges the state court's application of a state sentencing law. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Hanson v. Beth*, 738 F.3d 158, 161–62 (7th Cir. 2013) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). Federal habeas courts may grant a writ only if the Petitioner is in custody "in violation

of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *See Kidd v. Lemke*, 734 F.3d 696, 703 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2144 (2014). The court notes, in any event, that Petitioner's challenge to the thirty-five year sentence is a puzzling one: Petitioner appears to believe that because "usually felony murder carries with it a life sentence," the trial court's decision to sentence him to a term of years demonstrates that the sentence was disproportionate to the crime. (Habeas Pet. at 5.) The appellate court found that there was no abuse of discretion by the trial court, noting that the trial court had considered the appropriate sentencing factors, including the nature of the offense, Petitioner's expression of remorse, and Petitioner's chances of rehabilitation. (Direct Appeal Order at 9.) Petitioner's Claim Two does not allege that the state court denied Petitioner a federal constitutional right.

This court notes, further, that the sentencing challenge appears to be procedurally defaulted because Petitioner made no federal constitutional argument on this issue. Instead, when he raised Claim Two in state appellate court, Petitioner relied solely on Illinois law, citing no federal authority. (*See* Direct Appeal Order at 7–9; Pet.'s Direct Appeal Br. at 25–31; Pet.'s Direct Appeal Reply Br., Ex. D to St.'s Direct Appeal Br. at 8–9.) Claim Two is, thus, procedurally defaulted. *See Richardson*, 745 F.3d at 268 (stating that a claim may be procedurally defaulted if a petitioner fails to fairly present his claim to state courts).

Finally, any Eighth Amendment challenge to Petitioner's statutorily-authorized 35-year sentence appears to be meritless. *See Chapman v. United States*, 500 U.S. 453, 465 (1991) ("The court may impose whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, and . . . not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment."). Petitioner does not dispute that his sentence was authorized under Illinois law. (*See* Habeas Pet. at 5; Direct Appeal Order at 8.) Nor is the sentence arbitrary; "[t]he record reveals . . . the record reveals that the trial court made its sentencing decision after considering the appropriate sentencing factors.". (Direct

Appeal Order at 8.)  Petitioner's sentence was lawful and proportionate to the crime.  Claim Two is dismissed.

### C.  Claim Three: Ineffective Assistance of Counsel

Petitioner's third claim is that appellate counsel was ineffective on direct appeal for eight reasons.  Petitioner's Claim Three reads:

> Appellate counsel was ineffective on direct review for failure to raise [the] following post-trial issues preserved for review: 1- Miranda violation 2- errorneous [sic] jury instructions 3- plain error 4- inadequate admonishments [sic] 5- false testimony given at trial 6- denying motion to suppress statement 7- trial court erred denying motion for mis-trial from inflammatory remarks to jury- 8- testimony of officer Savage [sic].

(Habeas Pet. at 6(A).)

Beyond this summary, Petitioner offers no other facts or arguments in support of this claim, as required by Habeas Corpus Rule 2(c) and *Hayle v. Felix*, 545 U.S. 644, 645 (2005) ("Pleading must specify all the grounds for relief available to the petitioner and state the facts supporting each ground.")  Of Petitioner's laundry list of failures by appellate counsel, the only claims presented through one complete round of review in the state courts are the claims that his *Miranda* rights were violated, and the related argument that appellate counsel should have challenged the denial of a motion to suppress his post-arrest statement.  As addressed below, Petitioner has not shown that the state courts' resolution of any of these claims was unreasonable.

In assessing a claim of ineffective assistance, the court will "strongly presume" that counsel have "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (citing *Strickland*, 466 U.S. at 690).  The burden to demonstrate that counsel was deficient rests with the petitioner, who must establish two elements: "(1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense."  *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013).  To satisfy

the second element, Petitioner needs to show that there is a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Petitioner believes that appellate counsel was ineffective for failing to make a Miranda challenge on direct appeal. (Habeas Pet. at 6(A).) To establish ineffective assistance, Petitioner would have to demonstrate that counsel neglected issues that are "clearly stronger" than the arguments raised on appeal. *Blake*, 723 F.3d at 888 (citing *Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008)); *McNary v. Lemke*, 708 F.3d 905, 920 (7th Cir. 2013) ("Appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.") (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). In her *Finley* motion, Petitioner's post-conviction appellate counsel considered the viability of a *Miranda* argument. (Mot. to Withdraw at 12.) She recognized that trial counsel did move to suppress Petitioner's statements, and at a hearing on that motion, Detective Villardita and Assistant State's Attorney Fielder testified that they advised Petitioner of his *Miranda* rights prior to taking a formal statement. (*Id.*) Petitioner denied hearing *Miranda* warnings, but it was for the trial court to make a credibility determination. (*Id.*) Appellate counsel reasonably concluded that that Petitioner's *Miranda* claim was meritless, and the failure to raise a *Miranda* claim on direct appeal was not ineffective assistance. The state appellate court's rejecting this claim on post-conviction appeal was not "contrary to, or an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. § 2254(d); *See Richardson*, 745 F.3d at 273.

Nor can Petitioner prevail on his claim that counsel on direct appeal was ineffective in failing to challenge the trial court's ruling on the motion to suppress. (*See* Habeas Pet. at 6(A).) The only basis for a suppression motion was the alleged failure of the police to advise Petitioner of his *Miranda* rights, a claim that fails for the reasons described above. (*See* Post-Conviction

Pet. 3–4; Pet.'s Resp. to Mot. to Withdraw at 3; Post-Conviction PLA, Ex. K to St. Ct. R. at 3–4.) The conclusion that appellate counsel was not ineffective for failing to raise this issue was not "contrary to, or an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. § 2254(d); *See Richardson*, 745 F.3d at 273.

Petitioner did not present his remaining ineffective assistance arguments through one full round of state court review and they are procedurally defaulted. The court nevertheless addresses them briefly. His challenge to the allegedly erroneous jury instructions (Habeas Pet. at 6(A)), as well as his argument that the trial court should have instructed the jury on second-degree murder, both fail because he has not explained what was erroneous about the jury instructions that were given. The "plain error" argument appears to be another challenge to the prosecutor's closing argument. (*See* Pet.'s Direct Appeal Br. at 17–18; Direct Appeal Order at 3–4.) The state appellate court noted that Petitioner had waived it by failing to make a timely objection at trial (Direct Appeal Order at 3), but also pointed out that the prosecutor's comments fell "within the ambit of proper closing argument[s]" (*Id.* at 4 (citing *People v. Brandon*, 197 Ill. App. 3d 866, 885, 557 N.E.2d 1264, 1276 (1st Dist. 1990)).) In any event, appellate counsel did raise the claim of improper closing argument. (Pet.'s Direct Appeal Br. at 17–18.) To the extent that Petitioner is alleging that appellate counsel was ineffective in the manner that he argued plain error, Petitioner does not state facts that would support his claim or suggest that counsel was ineffective. (*See* Habeas Pet. at 6(A).)

Petitioner also suggests that appellate counsel was ineffective regarding "inadequate admonis[h]ments." (Habeas Pet. at 6(A).) He asserts that "counsel should have protected petitioner's rights not to be subjected to a more onerous sentence without the admonishment from the trial court" and that appellate counsel was ineffective for failing to raise this issue on direct appeal. (Post-Conviction Pet. at 6.) As post-conviction appellate counsel observed in her *Finley* motion, however, "there is no requirement that the trial court advise a defendant concerning any potential sentence that he might receive as compared to a co-defendant." (Mot.

to Withdraw at 16.)  Appellate counsel did argue, on direct appeal, that Petitioner's sentence was excessive  (Pet.'s Direct Appeal Reply Br., Ex. D to St.'s Direct Appeal Br. at 7–8), but the appellate court rejected the argument, noting that the trial court properly considered the sentencing factors and that the sentence was within the proper statutory range.  (Direct Appeal Order at 9.)  In this court, as well, Petitioner identifies no authority that would suggest that the trial court must advise a defendant of a "more onerous sentence" (*see* Habeas Pet. at 6(A))— assuming that a 35-year sentence is indeed more onerous than the life sentence Petitioner acknowledges is authorized by law.  Appellate counsel did challenge Petitioner's sentence on direct appeal, and the conclusion that counsel was not ineffective is not "contrary to, or an unreasonable application of, clearly established Federal law . . . ."  28 U.S.C. § 2254(d); *See Richardson*, 745 F.3d at 273.

Petitioner urges that appellate counsel was ineffective for failing to raise the issue of "false testimony given at trial," apparently a reference to the DNA testimony offered by Ridolfi. (Habeas Pet. at 6(A).)  But because Elam admitted to being in the car during the time leading up to Collins's death, the mistake in Ridolfi's testimony concerning DNA testing of female blood could not have prejudiced Petitioner, and counsel was not ineffective for failing to raise this issue, or any argument that the prosecutor knowingly presented false testimony (*see* Habeas Pet. at 6(A), (D)), on direct appeal.   (Post-Conviction Pet. at 7.)

Finally, Petitioner contends appellate counsel was ineffective for failing to argue, on direct appeal, that he was prejudiced by the prosecutor's "inflammatory remarks" and by Officer Salvage's reference to him as the "offender."  Again, Petitioner did not make these arguments to the state courts, he does not support them with any facts or authority, and most importantly, he offers no basis for the conclusion that these arguments were stronger than the ones that appellate counsel did raise.

### D. Claim Four: Ineffective Assistance of Counsel

Petitioner's fourth claim is that appellate counsel was ineffective for failing to challenge inflammatory remarks by the State's witness, Officer Salvage, when she referred to petitioner as the "offender." (*See* Habeas Pet. at 6(A).) Petitioner did raise this claim in his post-conviction petition, noting that Officer Salvage referred to him twice as the "offender" and that trial counsel improperly failed to object to those remarks. (*See* Post-Conviction Pet. at 2–3.) In dismissing the post-conviction petition, the trial court observed that counsel cannot be said to have been ineffective for failing to make meritless objections. (Order Denying Post-Conviction Pet., Ex. N to Post-Conviction Pet. at 6.) The trial court noted, further, that the decision of whether to object to trial testimony is a matter of trial strategy. (*Id.*) (citing *People v. Evans*, 209 Ill.2d 194, 221, 808 N.E.2d 939, 954 (Ill. 2004).) In any event, the trial court concluded, the language chosen by Officer Salvage was not prejudicial to the Petitioner. (*Id.*)

Petitioner attempted to renew this claim on post-conviction appeal, but post-conviction appellate counsel acknowledged in her *Finley* motion that no authority establishes that it was improper for Officer Salvage to refer to Petitioner as the "offender." (Mot. to Withdraw at 13.) Even if the reference was improper, counsel noted, it was limited and would not have amounted to a reversible error. (*Id.*) Granting the motion to withdraw pursuant to *Finley*, the appellate court stated that on careful review of the record, it found no issues of arguable merit to be raised on appeal. (Post-Conviction Appeal Order, Ex. H to Post-Conviction Pet. at 2.)

Petitioner cannot overcome the strong presumption that counsel's decision not to object was a matter of trial strategy. *See Burt*, 134 S. Ct. at 17 (citing *Strickland*, 466 U.S. at 690 (citations omitted) (Counsel are "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). Petitioner testified that he was in the car with the victim and admitted to hitting the victim. (*See* Direct Appeal Order at 2.) Thus, there was no question of identity at trial. In this context, however inappropriate the word "offender" may have been, Petitioner cannot establish the prosecutor's

use of that word prejudiced him.  *See Blake*, 723 F.3d at 879 (stating that defendant must prove "(1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense.").  Consequently, the state appellate court's decision rejecting Claim Four in Petitioner's post-conviction petition was not "contrary to, or an unreasonable application of, clearly established Federal law . . . ."  28 U.S.C. § 2254(d); *See Richardson*, 745 F.3d at 273.

### E.    Claim Five: Ineffective Assistance of Counsel

Petitioner's fifth claim is two-part: (1) that the State failed to prove him guilty beyond a reasonable doubt, and (2) that appellate counsel was ineffective on direct appeal for failing to argue reasonable doubt.  (*See* Habeas Pet. at 6(B).)  The trial court rejected this argument, presented in the post-conviction petition, as meritless.  (*See* Post-Conviction Pet. at 8–9,13.)  The court held that the facts support a first-degree murder conviction based on a theory of felony murder, as Petitioner "clients admitted to taking the victim against his will and beating him" and those actions "resulted in the victim's death."  (*Id.*)

Petitioner's post-conviction appellate counsel likewise addressed Claim Five in her *Finley* motion.  (*See* Mot. to Withdraw at 9–11.)  She observed that because the prosecution proceeded on a claim of felony murder, "the State was only required to prove that a murder occurred during the course of a felony."  (*Id.* at 10) (citing 730 ILCS 5/9-9(a)(3) (2009).)  To find Petitioner guilty of the felony of aggravated kidnapping, the jury need only find that the victim was confined against his will and that bodily harm was inflicted upon him.  720 ILCS 5/10-2(a)(3) (2007).  The evidence supporting those showings included police officers' testimony that they saw the victim in the car, yelling for help while waiving his arms, and Petitioner's admission to hitting the victim.  (Direct Appeal Order at 2.)  A defendant arguing insufficiency of the evidence faces an uphill battle on appeal, where the reviewing court draws "all reasonable inferences in the prosecution's favor and [will] affirm if any rational jury could have found the elements of the crime beyond a reasonable doubt."  *United States v. Eads*, 729 F.3d 769, 779

(7th Cir. 2013) (quoting *United States v. Wortman*, 488 F.3d 752, 754 (7th Cir. 2007)) (citations omitted). In this case, there was ample evidence of aggravated kidnapping: the jury reasonably could have concluded that the victim was being held against his will, and that Petitioner inflicted bodily harm upon the victim.

Evidence also established the felony of armed robbery. To prove that charge, the State was required to show that Petitioner took property from the victim while Petitioner carried or was otherwise armed with a dangerous weapon. 720 ILCS 5/18-2(a)(1) (2007). In her *Finley* motion, counsel noted Petitioner's own statement that he took the victim's cell phone and that he used a club to hit the victim on the head. (Mot. to Withdraw at 11.) As noted, the state appellate court granted counsel's *Finley* motion and affirmed the judgment, finding no issues of arguable merit. (Post-Conviction Appeal Order, Ex. H to Post-Conviction Pet. at 2.)

The evidence supports a finding that the victim died during the commission of a felony— either aggravated kidnapping or armed robbery. As the state court observed (*see id.*), appellate counsel was therefore not ineffective for failing to make a reasonable doubt argument on direct appeal. *See Blake*, 723 F.3d at 879 (to raise a successful claim of ineffective assistance of counsel, petitioner must show that but for counsel's errors, the result of the proceedings would have been different).

### F.    Claim Six: Denial of Confrontation Right

Petitioner's sixth claim is that he was denied his right to confront witnesses "when the prosecution argued that an inference of guilt was present when defense requested to cross examine State's witnesses." (Habeas Pet. at 6(B).) The prosecutor stated, "How about Officer Bertram, the first witness out of the box, how he was pounded on by counsel in terms of the fact that he spoke with the [p]rosecutors before he testified. This case is four-and-a-half years old. It's a murder case. But it's reckless to prepare for trial? It's reckless to not prepare for trial." (Direct Appeal at 4–5.) Defense counsel objected, and the court informed the jury that it must decide the case based on the evidence. (*Id.* at 5.) This court notes that Petitioner did raise

Claim Six on direct appeal and in his PLA to the Illinois Supreme Court on direct appeal. (*See* Direct Appeal Order at 4–7; Pet.'s Direct Appeal Br. at 18–22; Pet.'s Direct Appeal Reply Br., Ex. D to St.'s Direct Appeal Br. at 2–5; Direct Appeal PLA, Ex. E to St. Ct. R. at 2–3.)

The claim nevertheless fails because the state appellate court's decision in rejecting the claim was not "contrary to, or an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. § 2254(d); *See Richardson*, 745 F.3d at 273. The state appellate court concluded that the prosecutor's criticism of the defense was not an improper attack and did not "exceed the bounds of proper argument." (Direct Appeal Order at 5–6.) The court further noted that any impropriety was cured by the instruction to the jury that any argument made by counsel that is not "based on the evidence or reasonable inferences therefrom" should be disregarded. (*Id.*) In evaluating the propriety of the prosecution's argument, the Illinois appellate court pointed out that, on cross-examination, defense counsel questioned Officer Bertram extensively regarding his preparation with the prosecutor prior to his testimony. (*Id.* at 5.) The prosecutor thus sought, in closing, to contextualize the discussion with Officer Bertram, mainly concerning proper trial preparation; this effort was not an attack on the defense for exercising Petitioner's right to cross-examine the State's witnesses. (*Id.*) Claim Six is dismissed.

## G. Claim Seven: Error by Trial Court

Petitioner's Claim Seven is that the trial court erred by refusing to give the jury instructions pertaining to second-degree murder. (*See* Habeas Pet. at 6(C).) Petitioner did not raise Claim Seven through one complete round of state court review: he did not raise this claim in his brief to the state appellate court on direct appeal (*see* Direct Appeal Order; Pet.'s Direct Appeal Br.), nor did he raise it in his August 18, 2009 PLA. (*See* Direct Appeal PLA, Ex. E to St. Ct. R.) This claim was not presented in the *pro se* post-conviction petition. (*See* Post-Conviction Pet.) And it did not appear in his February 2, 2012 PLA. (See Post-Conviction PLA, Ex. K to St. Ct. R.) Therefore, Claim Seven is procedurally defaulted. *See Richardson*, 745 F.3d at 268 (stating that the complete-round obligation requires that petitioner "raise the issue at

each and every level in the state court system, including levels at which review is discretionary rather than mandatory"). The record does not demonstrate that Petitioner's procedural default should be excused. *See id.* at 272 (arguing that procedural default can be excused if petitioner can demonstrate prejudice or a "fundamental miscarriage of justice"). Claim Seven is dismissed.

### H. Claim Eight: Ineffective Assistance of Counsel

Petitioner's eighth claim is that appellate counsel was ineffective for failing to advocate for self-defense and second-degree murder jury instructions. (Habeas Pet. at 6(C).) Claim Eight fails for the same reasons as Claim Seven. (*See supra* 21–22.) Petitioner did not raise Claim Eight through one complete round of state court review, and the record does not demonstrate that the procedural default should be excused. See *Richardson*, 745 F.3d at 272. Thus, Claim Eight is dismissed.

### I. Claim Nine: Actual Innocence and Due Process

Petitioner's final claim is that is that he is actually innocent of felony murder. (*See* Habeas Pet. at 6(D).) A petitioner can obtain review of his defaulted claims by showing that "a fundamental miscarriage of justice" would result from denial of his petition because he is actually innocent. *Coleman,* 739 F.3d at 349. Petitioner cannot meet the high standard to prove a claim of actual innocence in this case. "A petitioner does not meet the threshold requirement unless he persuades that, in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (citing *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013)). Petitioner here offers no new evidence of his innocence. Instead, he merely disagrees that the evidence the jury considered was sufficient to support the conviction. That argument does not satisfy the threshold requirement.

In Claim Nine, Petitioner also asserts that he was convicted on the false testimony of the State's witness. (See Habeas Pet. at 6(D).) Specifically, he asserts that the prosecutor "knowingly used false testimony to obtain first degree murder conviction (alleging that petitioner

admitted to felony murder kidnapping murder whereas petitioner never admitted and the record reflects there is no mention of such) in violation of petitioner's due process rights not to be convicted upon knowingly [sic] and false testimony by State Representatives." (Habeas Pet. at 6(D).) Petitioner did raise this claim in his post-conviction petition (Post-Conviction Pet. at 7 ("Ridolfi admitted that he was not honest about what was examined in the backpack, and what was not"), and in response to post-conviction appellate counsel's *Finley* motion. (*See* Pet.'s Resp. to Mot. to Withdraw, Ex. J to Mot. to Withdraw at 4–5.) He also presented it in his post-conviction PLA. (*See* Post-Conviction PLA, Ex. K to St. Ct. R. at 7-8.)

But this argument, too, is meritless. The Illinois appellate court appears to have accepted the arguments set forth in counsel's *Finley* motion. (*See* Post-Conviction Appeal Order, Ex. H to Post-Conviction Pet. at 2.) As observed there, Ridolfi did not testify about any items in a backpack, and the mistake he made concerning the blood found in the vehicle could not have prejudiced Petitioner, who testified that he was indeed in the car during the episode that led up to the victim's death. (Mot. to Withdraw at 14–15.) The state appellate court's rejection of Claim Nine was not "contrary to, or an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. § 2254(d); *See Richardson*, 745 F.3d at 273. Claim Nine is dismissed.

## III. Certificate of Appealability

This court declines to issue a certificate of appealability. A "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(B)(2); *See United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (detailing requirements for the granting of a certificate of appealability). To the extent this court has denied relief on procedural grounds, Petitioner would be required to show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Edgington v. Hinsley*, 115 F. App'x 879, 880

(7th Cir. 2004) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The court concludes that its rulings on procedural default are not ones that reasonable jurists would find debatable. The case otherwise presents only state law claims or meritless arguments. Petitioner has failed to demonstrate the denial of a constitutional right.

## **CONCLUSION**

For the foregoing reasons, Petitioner's habeas corpus petition is denied and this court declines to issue a certificate of appealability.

ENTER:

Dated: January 12, 2015

REBECCA R. PALLMEYER
United States District Judge